No. 22-2912

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*

v.

ROMELLE DARRYL SMITH,

*Defendant—Appellant.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

APPELLANT'S REPLY BRIEF

MITCHELL, BRUDER & JOHNSON
By: Glenn P. Bruder
Attorney No.: 148878
9531 West 78th Street
Suite 210
Eden Prairie, MN 55344
(952) 831-3174

# TABLE OF CONTENTS

Table of Authorities …………………………………………………… ii

**STATEMENT OF THE CASE AND FACTS** …………………….  1

**ARGUMENT**

I.     **The GPS tracking warrant obtained by law enforcement** …… 2
       **did not confer independent authority or justification for**
       **the seizure of the vehicle in which Appellant was a passenger.**

A.    **The GPS tracking warrant merely authorized police to** …… 3
       **obtain data from the cell phone carrier.**

B.    **Police did not have a sufficient quantum of evidence to** …… 5
       **create a reasonable suspicion that Ramey was in the**
       **vehicle stopped on July 20, 2020.**

**CONCLUSION** …………………………………………………… 10

# TABLE OF AUTHORITIES

Cases                                                                          Page

*Carpenter v. United States*, 138 S. Ct. 2206 (2018) ………………….   4

*Illinois v. Gates*, 462 U.S. 213 (1983) ……………………………….   6

*Rakas v. Illinois*, 438 U.S. 128 (1978) ……………………………….   6

*Rawlings v. Kentucky*, 448 U.S. 98 (1980)    ……………………...   6

*United States v. Corrales Portillo*, 779 F.3d 823 (8th Cir. 2015) …   5

*United States v. Hollins*, 685 F.3d 703 (8th Cir. 2012)    ………...   5

*United States v. Miller*, 452 U.S. 435 (1976) ………………………   4

*United States v. Phillips*, 679 F.3d 995 (8th Cir. 2012)    …………   2, 8, 9

*Unites States v. Stringer*, 739 F.3d 391 (8th Cir. 2014)    …………   6

Statutes and Rules                                                             Page

18 U.S.C. §922(g)(1)         ……………………………………………   1

18 U.S.C. §924(e)(1)         ……………………………………………   1

# STATEMENT OF THE CASE AND FACTS

Appellant and the government have supplied the Court with briefs extensively recounting the factual circumstances giving rise to Appellant, Romelle Darryl Smith's ("Appellant" or "Smith") indictment and subsequent conviction for being a felon in possession of a firearm in violation of 18 U.S.C. §§922(g)(1) and 924(e)(1). These narratives were exhaustive and will not be supplemented in this Reply Brief.

# ARGUMENT

I. **THE GPS TRACKING WARRANT OBTAINED BY LAW ENFORCEMENT DID NOT CONFER INDEPENDENT AUTHORITY OR JUSTIFICATION FOR THE SEIZURE OF THE VEHICLE IN WHICH APPELLANT WAS A PASSENGER.**

In essence, the government's Brief argues that, by obtaining a GPS tracking warrant, law enforcement agents had justification for seizing anyone reasonably believed by police to be in proximity to that device. The logical sequence by which the government proffers this position is based on six arguments which, to some extent, build on one another. The government asserts: (1) There is no dispute that police had probable cause to arrest Jamichael Ramey ("Ramey"). *(Govt. Br., 18).* (2) Police obtained a GPS cell phone tracking warrant based on the decision of a neutral Magistrate. *(Govt. Br., 20).* (3) Smith cannot contest the validity of that warrant. *(Govt. Br., 22).* (4) Accordingly, merely by connecting the location information supplied by the GPS tracking warrant to the GMC Envoy, police were authorized to stop the vehicle. *(Govt. Br., 21).* (5) Moreover, police had additional evidence to support the stop, including physical observations of Smith who resembled Ramey. *(Govt. Br., 19).* The government's Brief cites *United States v. Phillips* in support of that proposition. *(Govt. Br., 17-18).* (6) Accordingly, officers were not relying on information supplied by their confidential informant (CI) in

2

stopping the vehicle, but upon the authority conferred by a warrant issued by a neutral Magistrate coupled with their unique observations. *(Govt. Br., 20).*

This argument has a number of defects. It misstates the purpose of its investigative warrant, overstates the authority granted to police by that warrant, exaggerates the objective evidence assembled by law enforcement agents and, most importantly, seeks to wholly disguise and obscure police reliance on an undisclosed informant whose credibility was addressed in broad, conclusory strokes, if at all, during the motion hearing.

> **A.   The GPS tracking warrant merely authorized police to obtain data from the cell phone carrier.**

The GPS tracking warrant obtained by police was far more limited in scope than suggested by the government. It did not authorize the arrest of an individual, nor did it authorize police to seize a vehicle or even make an investigative stop and interrogate the occupants of a vehicle. The GPS tracking warrant was simply an investigative warrant. Its purpose was to facilitate a criminal investigation and allow police to search for additional information which might implicate their primary suspect, Ramey, and provide information concerning his location. This was clear from the face of the warrant itself. It was addressed to a cell phone carrier, T-Mobile, and directed the cell phone carrier to make location technology information available to the police. The warrant was issued with the hopeful expectation that supplying this information "will result in the discovery of

3

evidence…" The warrant further stated the information sought was "relevant to an ongoing criminal investigation…" *(Govt. Add., 8).*

The purpose of an investigative warrant, such as the one obtained by police in this case, is to gather evidence. In *United States v. Miller,* the Supreme Court recognized this as a legitimate law enforcement function during the conduct of criminal investigations. In that instance, the government sought a suspect's bank records, as here, from a third party who maintained the information. The Supreme Court found no constitutional impediment:

> The [customer] takes the risk in revealing his affairs to another that the information will be conveyed by that person to the government (citation omitted). This Court has repeatedly held that the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to government authorities even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed.

*Id. 452 U.S. 435, 443 (1976).*

In a more recent decision, *Carpenter v. United States,* the Court placed a limit on the exercise of this authority. The Fourth Amendment does not permit the government to make sweeping demands for records based on conjecture but instead law enforcement officials must provide a "'quantum of individualized suspicion' before a search or seizure may take place." *Id. 138 S. Ct. 2206, 2221 (2018).* By issuing a warrant, the neutral Magistrate in this instance merely found that the government produced probable cause that the records sought by the

4

government might have a connection with the current investigation. Nothing in that warrant authorized any particular search or seizure of a vehicle or an individual, and certainly did not suggest that the government could dispense or overlook its burdens under the Fourth Amendment before effecting an arrest or an investigatory stop.

As always, regardless of this GPS tracking warrant, law enforcement agents may only make a warrantless stop an automobile and its occupants when supported by either reasonable suspicion or probable cause. *United States v. Hollins, 685 F.3d 703, 705-706 (8th Cir. 2012).* At minimum, this required a "reasonable suspicion that criminal activity may be afoot." *United States v. Corrales Portillo, 779 F.3d 823, 829 (8th Cir. 2015).* Contrary to the government's argument, that did not permit officers seeking the location of Ramey to stop a vehicle merely because a GPS tracking devise suggested a particular cell phone was in the vehicle. Police needed to have the requisite measure of information that Ramey, himself, was in the vehicle.

**B.      Police did not have a sufficient quantum of evidence to create a reasonable suspicion that Ramey was in the vehicle stopped on July 20, 2020.**

The first three contentions advanced by the government, that it had probable cause to arrest Ramey, that police officials obtained a GPS tracking warrant and that Smith lacked standing to contest that warrant are essentially irrelevant to the

5

issues presented here. The government is correct. Appellant cannot challenge the GPS tracking warrant which it obtained in connection with its investigation of Ramey. Whether the warrant sought by the government was for information relating to a cell phone owned by Ramey or Armstrong, the warrant sought information relating to the affairs of a third party other than Smith. As a result, Smith cannot assert the Fourth Amendment rights of either Ramey or Armstrong to challenge the issuance of the warrant. *Unites States v. Stringer, 739 F.3d 391, 396 (8th Cir. 2014); Rawlings v. Kentucky, 448 U.S. 98, 104-106 (1980); Rakas v. Illinois, 438 U.S. 128, 133-138 (1978).*

    Contrary to the government's implication, it is not necessary for Smith to challenge the validity of that investigative warrant. Smith's position is that even if the government believed that a particular cell phone was in the vehicle, that bit of information alone did not create either reasonable suspicion or probable cause to stop the vehicle in which Smith was a passenger. The correct test is whether, under the totality of the circumstances, law enforcement agents had reasonable suspicion to believe that their suspect would be inside the automobile. See *Illinois v. Gates, 462 U.S. 213 (1983).* The answer to that issue depends on the validity of the government's three remaining assertions, that linking the GMC Envoy to the cell phone, coupled with additional police observations fundamentally add creditability to the informant's information sufficient to justify a seizure of the vehicle.

6

In Smith's Brief, he explained, at the outset, why the government had presented, at best, flimsy evidence to support its reliance on this particular informant. In an effort to excuse the minimal information it supplied to support the informant's knowledge base, the government now argues the basis for the police decision had no connection with its confidential informant but, instead, was wholly tied to information derived from execution of the warrant—specifically evidence suggesting that the cell phone being tracked by the government could be found in the vehicle and that information, alone, justified the stop.

This argument involves no small measure of sophistry. The government hopes to evade any meaningful exploration of its informant's credibility by suggesting law enforcement agents, in stopping the vehicle, were relying solely on information derived from a warrant which cannot be challenged by Appellant. This, of course, ignores the fact that the warrant was issued only because the government's informant linked the cell phone to its suspect, Ramey. Plainly, that information was incorrect. The cell phone belonged to Armstrong, not Ramey. Any possible connection between Armstrong and Ramey is, in turn, wholly conjectural.

To suggest that *any evidence* connecting the cell phone to a particular vehicle would be sufficient to justify the seizure of that automobile and its occupants effectively nullifies many of the protections afforded by the Fourth Amendment. For example, if GPS tracking information had linked the cell phone

7

number to an automobile whose sole occupant was a middle-aged white man wearing a business suit, or an Asian woman with three small children, it would be absurd to contend that the information derived from the warrant provided reasonable suspicion for a vehicle stop.

Recognizing this, the government asserts police had corroborating information linking Ramey to the vehicle and argues that officers believed the passenger "may be Ramey based on his physical appearance." *(Govt. Br., 21)*. This evaluation is, unfortunately, not supported by the record presented at the pretrial hearing. During that appearance, officer Schmitt admitted the *only* reason he believed the individual he observed during the surveillance (later identified as Appellant) was Ramey was that he was a young black male. *R. Doc. 64* at *54-55)*. Plainly, Armstrong could not be confused with Ramey. He was a middle-aged man with a significantly different appearance. Ramey's build was also significantly different than Appellant. He was much taller and heavier.

The government implicitly recognizes that, for there to be a reasonable basis for this stop, there must have been some similarity between at least one of the passengers in the automobile and the subject of the investigation. Accordingly, the government argues this case was analogous to *United States v. Phillips,* where the police felt they had identified a wanted individual but were mistaken. In *Phillips,* the physical similarity between Phillips and the police suspect was used by this

8

Court to justify restraining Phillips even though he was not the subject of the search.

However, that case presented markedly different facts from this one. In *Phillips,* the suspect and Phillips shared what officer believed were *several* similar physical traits, coupled with suspicious behavior. In particular, both the suspect and Phillips were large individuals who were also bald. According to the arresting officers, Phillips appeared nervous and made unusual physical gestures. *United States v. Phillips, 679 F.3d 995, 996-997.* One of the officers stated "the bald head really stuck out" in describing why he believed Phillips was the suspect. *Id.* at *997.* In contrast, here, officers struggled to provide any justification for believing Smith was Ramey. Officers admitted they had a poor view of the apartment where Smith was surveilled. The officers stated that, unlike Phillips, Smith was not acting in an unusual or suspicious manner. Smith had no unique features observed by the officers which suggested he was Ramey.[1] The cold, harsh reality is that Officer Schmitt was being candid when he recounted:

> Q: Other than the fact that Mr. Smith happened to be a young, black man, was there anything about him that made you believe he had committed a crime?
>
> A: No.

*(R. Doc. 64 at 54-55).*

---

[1] Smith's face was tattooed but officers denied observing this feature.

9

## CONCLUSION

The circumstances which led to Smith's arrest afford profound evidence of casual and sloppy police work. This is not a country where being a young black man creates reasonable suspicion that a citizen has engaged in criminal activity. Police acted in a patently unconstitutional manner when they stopped the vehicle in which Smith was a passenger and all evidence derived from that search should be suppressed.

Dated: <u>January 30, 2023</u>　　　　MITCHELL, BRUDER AND JOHNSON

　　　　　　　　　　　　　　　　　　*/s/ Glenn P. Bruder*
　　　　　　　　　　　　　　　　　　Glenn P. Bruder
　　　　　　　　　　　　　　　　　　Attorney for Appellant
　　　　　　　　　　　　　　　　　　Attorney ID# 148878
　　　　　　　　　　　　　　　　　　9531 West 78th Street
　　　　　　　　　　　　　　　　　　Suite 210
　　　　　　　　　　　　　　　　　　Eden Prairie, MN 55344
　　　　　　　　　　　　　　　　　　(952) 831-3174

# CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(7)(B)(i) I hereby certify that the foregoing brief complies with the type and volume limitations because this brief contains 2027 words excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the type face requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced type face using Microsoft Word in Times New Roman 14. It has also been scanned for viruses and is virus-free.

Dated: <u>January 30, 2023</u>     MITCHELL, BRUDER AND JOHNSON

*/s/ Glenn P. Bruder*
Glenn P. Bruder
Attorney for Appellant
Attorney ID# 148878
9531 West 78th Street
Suite 210
Eden Prairie, MN 55344
(952) 831-3174

# CERTIFICATE OF SERVICE

I, Glenn P. Bruder, certify that two true and correct copies of the foregoing brief have been mailed, by first class mail, postage prepaid on _____

to:

Lisa Kirkpatrick
Assistant U.S. Attorney
United States Attorney's Office
300 S. 4th Street, Suite 600
Minneapolis, MN 55415
Minneapolis, MN 55415

Appellant's opening brief was submitted electronically for review on January 30, 2023 and service will be achieved by CM/ECF to all registered users on this date.

Dated: <u>January 30, 2023</u>           */s/ Glenn P. Bruder*
                                                              Glenn P. Bruder